UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL DEAN,

      Petitioner,

v.                                    CASE NO. 6:07-cv-1461-Orl-31DAB

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

      Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Thereafter, the Court concluded that the petition was untimely filed, and Petitioner appealed. The Eleventh Circuit Court of Appeals reversed and remanded with instructions that the State be provided an opportunity to overcome the presumption that Petitioner's Florida Rule of Criminal Procedure 3.800(a) motion to correct illegal sentence was filed on June 24, 2003. (Doc. No. 30 at 13.) On remand, Petitioner filed a motion to amend his habeas petition, which the Court granted. *See* Doc. Nos. 34 & 35. Respondents filed a response to the amended petition in compliance with this Court's instructions (Doc. No. 38). Petitioner filed a reply to the response (Doc. No. 42).

      Petitioner alleges seven claims for relief in his amended petition: (1) the State committed fraud on the state court and defense counsel by intentionally misrepresenting the filing date of the amended information, (2) trial counsel rendered ineffective assistance

by failing to object to the in-court and out-of-court identifications of Petitioner by the three victims, (3) trial counsel rendered ineffective assistance by failing to file a timely motion to dismiss the amended information, (4) trial counsel rendered ineffective assistance by failing to object to the amended information and request a severance of the offenses prior to or during trial, (5) trial counsel rendered ineffective assistance by failing to object to a fundamental error in the jury instructions, (6) trial counsel rendered ineffective assistance by failing to object to a vague jury instruction, and (7) the trial court's denial of Petitioner's motion to correct illegal sentence was error.

## I.      *Procedural History*

Petitioner was charged by amended information with two counts of robbery with a deadly weapon (counts one and three), one count of attempted robbery with a deadly weapon (count two), and one count of fleeing or attempting to elude a law enforcement officer at high speed (count four).  A jury trial was conducted, and Petitioner was found guilty of two counts of robbery with a deadly weapon, one count of attempted robbery with a deadly weapon, and the lesser-included offense of fleeing or attempting to elude a law enforcement officer after lights and sirens had been activated.  The trial court sentenced Petitioner to life in prison as to counts one and three, to a thirty-year term of imprisonment as to count two, and to a five-year term of imprisonment as to count four. Petitioner appealed, and the Fifth District Court of Appeal of Florida *per curiam* affirmed on November 19, 2002.

Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief on December 1, 2004, which he subsequently amended.[1]  The trial court denied the amended motion and Petitioner's motion for rehearing, and Petitioner appealed. The state appellate court *per curiam* affirmed on August 8, 2006.  Mandate was issued on October 6, 2006.  (App. F at 115.)

While his Rule 3.850 motion was pending, on December 5, 2004, Petitioner filed a state habeas petition.  (App. G at 44.)  The Fifth District Court of Appeal of Florida denied the petition on February 4, 2005.  (App. G at 168.)  Petitioner filed a motion for rehearing, which was denied on March 17, 2005.  (App. G at 177.)

On September 29, 2006, Petitioner filed a pleading with the state trial court demanding performance, wherein he sought a ruling on his Florida Rule of Criminal Procedure 3.800(a) motion to correct illegal sentence.  (App. H at 1-8.)  Petitioner asserted that his Rule 3.800(a) motion was filed on June 24, 2003.  On October 30, 2006, the trial court struck Petitioner's demand for performance noting that "neither the case files nor the Clerk's computer contains any indication that [Petitioner] ever filed such a motion." (App. H at 9.)

On November 13, 2006, Petitioner filed a motion to accept his Rule 3.800(a) motion

---

[1]This is the filing date under the "mailbox rule."  *See Thompson v. State*, 761 So. 2d 324, 326 (Fla. 2000) ("[W]e will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of prison or jail officials for mailing on a particular date, if that [sic] the pleading would be timely filed if it had been received and file-stamped by the Court on that particular date.").  All further references to the filing date of pleadings by Petitioner shall be the filing date under the mailbox rule, unless otherwise noted.

*nunc pro tunc.* (App. H at 10.)   On December 15, 2006, the trial court denied the Rule 3.800(a) motion and determined that the motion was filed on November 22, 2006.  (App. H at 19-22.)  Petitioner appealed, and the state appellate court *per curiam* affirmed on March 20, 2007.  (App. H at 37.)  Mandate was issued on May 21, 2007.   (App. H at 51.)

Petitioner initiated this action on September 7, 2007.  While the instant action was pending, on September 30, 2008, Petitioner filed a second Rule 3.850 motion in the state court.  (Doc. No. 38-1 at 11.)  The state court summarily denied the Rule 3.850 motion, and Petitioner appealed.  The Fifth District Court of Appeal of Florida affirmed *per curiam.* Mandate was issued on March 15, 2010.  Petitioner filed his amended petition for writ of habeas corpus in this Court on March 10, 2010.[2]

## II.   *Legal Standards*

### A.   *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable

---

[2]Respondents continue to argue that the petition was not timely filed.  However, Respondents failed to provide any evidence to overcome the presumption that Petitioner's Florida Rule of Criminal Procedure 3.800(a) motion to correct illegal sentence was filed on June 24, 2003.  Thus, in light of the Eleventh Circuit's opinion, Respondents' argument that the petition is untimely is without merit.  To the extent Respondents argue, however, that claim one was not timely added, this argument will be addressed in claim one.

> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-court

decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions;

the 'contrary to' and 'unreasonable application' clauses articulate independent

considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432

F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh

Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by [the United States
> Supreme Court] on a question of law or if the state court decides a case
> differently than [the United States Supreme Court] has on a set of materially
> indistinguishable facts. Under the 'unreasonable application' clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from [the United States Supreme Court's] decisions
> but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly,

habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the

state court's decision "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." A determination of a factual issue

made by a state court, however, shall be presumed correct, and the habeas petitioner shall

have the burden of rebutting the presumption of correctness by clear and convincing

evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.    Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

established a two-part test for determining whether a convicted person is entitled to relief

on the ground that his counsel rendered ineffective assistance: (1) whether counsel's

performance was deficient and "fell below an objective standard of reasonableness"; and

(2) whether the deficient performance prejudiced the defense.[3] *Id*. at 687-88. A court must

adhere to a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the

facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v.

Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective

assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the
> test even what most good lawyers would have done. We ask only whether
> some reasonable lawyer at the trial could have acted, in the circumstances,
> as defense counsel acted at trial. Courts also should at the start presume
> effectiveness and should always avoid second guessing with the benefit of
> hindsight. *Strickland* encourages reviewing courts to allow lawyers broad
> discretion to represent their clients by pursuing their own strategy. We are
> not interested in grading lawyers' performances; we are interested in

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court
clarified that the prejudice prong of the test does not focus solely on mere outcome
determination; rather, to establish prejudice, a criminal defendant must show that counsel's
deficient representation rendered the result of the trial fundamentally unfair or unreliable.

whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted), *cert. denied*, 514 U.S. 1131 (1995). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.    *Analysis*

#### A.    *Claim One*

Petitioner asserts that the State committed fraud on the state court and defense counsel by intentionally misrepresenting the filing date of the amended information. Respondents contend that claim one of the amended petition does not relate back to the original petition and thus is not timely.

On the date Petitioner filed his initial federal habeas petition, September 7, 2007, 236 days of the one-year statute of limitations had expired. *See* Doc. No. 30 at 10, n.5. Thus, 127 days of the one-year limitation period remained. Petitioner filed his second Rule 3.850 motion in the state court, asserting the instant claim, on September 30, 2008, more than 127 days after the filing of his habeas petition. Petitioner filed the amended petition in this Court on March 10, 2010.

Claims asserted in an amendment to a habeas petition, must be filed within the one-year statute of limitation pursuant to 28 U.S.C. § 2244. *See Farris v. United States*, 333 F. 3d 1211, 1215 (11th Cir. 2003). Federal Rule of Civil Procedure 15(c) "dictates that an amendment only relates back to the original pleading and causes an otherwise untimely

claim to be considered timely when, . . . 'the claim or defense asserted in the amended

pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be

set forth in the original pleading.'" *Id.* (quoting Fed. R. Civ. P. 15(c)(2)). The Eleventh

Circuit has concluded that

> to relate back, an untimely claim must have more in common with
> the timely filed claim than the mere fact that they arose out of the
> same trial or sentencing proceeding. The untimely filed claim
> must have arisen from the "same set of facts" as the timely filed
> claim, not from separate conduct or a separate occurrence in "both
> time and type."

*Farris*, 333 F.3d at 1215. Likewise, the United States Supreme Court has held that "[a]n

amended habeas petition, . . . does not relate back (and thereby escape AEDPA's one-year

time limit) when it asserts a new ground for relief supported by facts that differ in both

time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650

(2005).

In claim one of the amended petition, Petitioner alleges that the prosecution

committed fraud. In the original petition, Petitioner did not allege a claim of prosecutorial

fraud. Instead, the petition asserted five claims of ineffective assistance of counsel and one

claim of trial court error. Claim two of the initial petition and claim three of the amended

petition allege that trial counsel rendered ineffective assistance by failing to file a timely

motion to dismiss the amended information. In support of this claim, Petitioner maintains

that the State filed an amended information the day after he asserted his right to speedy

trial and the amended information prejudiced his defense as it added new charges. It

appears that claim one of the amended petition, which asserts that the prosecutor fraudulently represented the filing date of the amended information, arises from the same core of operative facts as claim two of the initial petition, namely the filing of the amended information. Thus, the Court concludes that claim one of the amended petition relates back to claim two of the initial petition. The Court, therefore, finds that the claim was timely raised.

Petitioner raised claim one in his second Rule 3.850 motion. The state court denied the claim, concluding that Petitioner failed to demonstrate that the State acted in bad faith or intentionally informed the court that the amended information was filed on October 29, 2001, the date Petitioner filed his demand for speedy trial, rather than October 30, 2001, the date it was actually filed. (Doc. No. 35-1 at 10.) The state court noted that the filing date of the amended information could easily have been verified by viewing the docket sheet, which the clerk was in the process of finding during the calender call on the demand for speedy trial. *Id*. The state court further reasoned that even if the trial court was notified that the amended information was filed one day after Petitioner filed his demand for speedy trial, he would not have been entitled to dismissal of the amended information. *Id*.

The Eleventh Circuit has held that courts "may find prosecutorial misconduct where (1) a prosecutor makes improper remarks (2) that prejudicially affect the substantial rights of the defendant." *United States v. Castro*, 89 F.3d 1443, 1457 (11th Cir. 1996) (citing *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991)).

The record reflects that on October 4, 2001, the State filed an information charging

Petitioner with two counts of robbery with a firearm of Karen Adkins[4] ("Adkins") and two counts of fleeing or eluding. Thereafter, on October 29, 2001, Petitioner filed a demand for speedy trial. On October 30, 2001, the State filed an amended information charging Petitioner with three counts of robbery with a deadly weapon for incidents involving Adkins, Richard Kendrick ("Kendrick"), and Theodore Washington ("Washington"), and one count of fleeing or eluding. On October 31, 2001, the trial court conducted a calender call on Petitioner's demand for speedy trial.

At the calender call, the prosecutor told the trial court that he did not know if the defense was aware that the State had "amended the Information this week." (App. 38-2 at 5.) Thereafter, the prosecutor stated that the amended information was filed on Monday, which would have been October 29, 2001. *Id.* The trial court then attempted to locate the amended information, and the clerk advised the judge that he or she was waiting to receive a copy from the Clerk of Court. *Id.* at 6-7. The trial court asked the prosecutor if he had a copy of the amended information at which time the prosecutor provided a copy to the court. *Id.* at 7-8. The court then arraigned Petitioner with the copy of the amended information. *Id.*; *see also* App. A at 52. The copy of the amended information provided to the court did not contain a file stamp date. (App. A at 53-56.) The file stamp date on the amended information contained in the record is October 30, 2001, while the signature date is October 29, 2001. *Id.* at 50-52.

─────────────────────

[4]The information spells the victim's last name as "Atkins." However, in the amended information, the victim's name is spelled "Adkins."

The Court notes that it is questionable that the prosecutor intentionally misrepresented the filing date of the amended information. At the calender call, the prosecution first noted that the amended information had been filed the week of the calender call and subsequently noted that it was filed on Monday, which would have been October 29, 2001. Given that the amended information was signed by the prosecutor on October 29, 2001, it is not implausible that his statement was simply inadvertent.

More importantly, as discussed more fully in claim three *infra*, Petitioner cannot establish that the prosecutor's misstatement prejudicially affected Petitioner's substantial rights. As noted by the state court, even if the state court and defense counsel had been properly advised of the filing date of the amended information, the amended information would not have been subject to dismissal as no prejudice resulted, or if prejudice occurred, dismissal of the amended information was not mandated. *See State v. Clifton*, 905 So. 2d 172, 178 -79 (Fla. 5th DCA 2005) (holding "the state may amend its information pre-trial or even during trial, either as to substantive or non-substantive matters, unless the defendant is prejudiced thereby."); *see also Wright v. State*, 41 So. 3d 924, 926 (Fla. 1st DCA 2010) ("[T]he changing or adding of an offense in an information is a substantive change evoking prejudice and requiring a continuance."). Accordingly, claim one is denied pursuant to § 2254(d).

**B.** **Claim Two**

Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to the in-court and out-of-court identifications made by the three victims. In support of this

claim, Petitioner maintains that the victims' identifications of him were the result of unnecessarily suggestive show-up procedures. Petitioner contends that counsel's failure to object to the identifications resulted in the issue not being preserved for appellate review.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim pursuant to *Strickland*. (App. E, Order Denying Amended Motion for Postconviction Relief at 3.) The state court noted that defense counsel filed a motion to suppress the show-up identifications, a hearing was conducted on the motion, and the trial court concluded that the show-up identifications were not unduly suggestive and created no likelihood of misidentification. *Id.* The state court agreed with the trial court's ruling and determined that counsel had no legal basis to object to the identifications at trial. *Id.* Furthermore, the state court reasoned that a significant amount of evidence implicated Petitioner in the offenses other than the victims' identifications. *Id.* Among the evidence the jury observed was the following: (1) the identification of the blue truck used in the robberies, which Petitioner had borrowed from a friend; (2) one of the victim's driver's license and money found in the truck; and (3) the identification of Petitioner by the police as the driver of the truck. *Id.* The state court concluded, therefore, that Petitioner failed to demonstrate prejudice from counsel's failure to object to the victims' identifications. *Id.*

Petitioner has failed to show that the state court's denial of this claim is contrary to, or an unreasonable application of, clearly established federal law. The Supreme Court of United States has noted that "[s]uggestive confrontations are disapproved because they

increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). However, suggestive "show-up" identifications are admissible if, based on the totality of the circumstances, the identification was reliable. *Id.* at 199. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200. "The state court's findings on each of the *Biggers* factors are entitled to a presumption of correctness, and [the petitioner must show] that those findings were clearly erroneous." *Hawkins v. Sec., Fla. Dep't of Corr.*, 2007 WL 669293, at *3 (11th Cir. 2007).

At the hearing on the motion to suppress, the three victims testified concerning their identifications of Petitioner as one of the perpetrators of the robberies. Washington testified that he was robbed at approximately 9:30 p.m. by two African-American men after he had withdrawn money from an ATM and attempted to enter his truck. (App. B at 20.) Washington stated that the individual on the passenger side of a blue truck jumped out of the truck and pointed a gun in his face. *Id.* at 21. The man who pointed the gun at Washington was wearing a blue bandana on his face. *Id.* at 22. Washington testified that the driver of the blue truck exited the vehicle to assist the initial perpetrator and he saw the driver of the truck, who was not wearing anything on his face. *Id.* at 24. Washington said

that the area was well-lit when the robbery occurred. *Id.* Washington wrote a statement immediately after the robbery in which he described the perpetrators. *Id.* at 33. Thereafter, approximately fifteen minutes after he wrote the statement, an officer took him to a location to allow him to view two suspects. *Id.* at 34. Washington indicated that none of the officers told him that the suspects were the men who robbed him. *Id.* Washington said that he viewed each man separately and identified Petitioner as the driver of the blue truck and the other suspect as the gunman. *Id.* at 35. Washington testified that he had no doubt about his identifications. *Id.*

Likewise, Adkins testified that she was in her front yard around 9:30 p.m. on the same date when a blue truck stopped in front of her driveway. *Id.* at 68-72. Adkins said that the driver of the vehicle, who had a red bandana around the lower part of his face and a red bandana covering his hair, approached her, pointed a gun at her, and demanded money. *Id.* at 73. She stated that the majority of the man's nose was visible. *Id.* at 74. Adkins indicated that the man was approximately one foot from her during the incident and there was a street light approximately fifteen feet from her vehicle in the driveway. *Id.* at 75-76. Adkins testified that she observed the man for approximately ten seconds and saw the uncovered portion of his face clearly. *Id.* at 77. She said that the police arrived about forty-five minutes after the incident and took her to view two possible suspects shortly thereafter. *Id.* 81-83. Adkins testified that she viewed each suspect and identified Petitioner, who was wearing the same clothing, as the man who had tried to rob her. *Id.* at 83-84. Adkins stated that she was one-hundred percent certain of her identification. Id.

Finally, Kendrick, Adkins' roommate, testified that he observed a blue truck outside his apartment when he exited the apartment. *Id*. at 102. At that time, Kendrick saw a man wearing a red bandana on the lower part of his face and wearing a dark jumpsuit with a stripe on the sleeves. *Id*. at 103-04. The man approach Kendrick, pointed a gun at him, and took approximately ten dollars from him. *Id*. at 105-06. Kendrick's driver's license was wrapped in the money that was taken. *Id*. at 107. Kendrick stated that the incident lasted about five minutes during which time he was focused on the perpetrator and got a clear look at the part of the perpetrator's face that was not covered. *Id*. at 105-06. Kendrick testified that the perpetrator was the driver of the blue truck. *Id*.at 107. Kendrick said that he and Adkins were taken to another location by an officer shortly after the robbery to view two possible suspects. *Id*. at 121-24. Kendrick identified Petitioner as the perpetrator based on his facial features and clothing. *Id*. at 124. Kendrick noted that Petitioner still had a red bandana around his neck at the time of the identification. *Id*. at 125. Kendrick testified that he had no doubt about his identification. *Id*.

Based on the totality of circumstances, the Court finds that there is not "a very substantial likelihood of irreparable misidentification that would have led to the exclusion of the identification evidence." *Hawkins*, 2007 WL 669293 at *3. The evidence demonstrates that (1) the victims had sufficient opportunity to view the perpetrator at the time of the incidents, (2) the victims' attention was focused on the perpetrator, (3) their descriptions to the police of the perpetrator and his clothing were consistent, (4) the victims were certain that Petitioner was the perpetrator when they viewed him, and (5) the victims identified

Petitioner less than an hour after the incidents occurred. Thus, the show-up and in-court identifications were admissible.

Finally, the Court notes that other evidence was presented implicating Petitioner in the offenses. Ernest Reese ("Reese") testified that he loaned Petitioner his blue truck on the date of the offenses. The victims identified Reese's truck as the one driven by one of the perpetrators. Kendrick's driver's license and money also were found in the truck after police chased the vehicle and Petitioner and his co-defendant exited the truck. Petitioner, who ran from the police, was apprehended a few minutes later wearing a red bandana around his neck. Thus, sufficient evidence other than the victims' identifications of Petitioner was presented to the jury. As such, the Court concludes that Petitioner has not demonstrated that a reasonable probability exists that the outcome of his trial or appeal would have been different had counsel raised an objection to the victims' out-of-court and in-court identifications. Accordingly, claim two is denied pursuant to § 2254(d).

C.    *Claim Three*

Petitioner contends that trial counsel rendered ineffective assistance by failing to file a timely motion to dismiss the amended information. In support of the claim, Petitioner maintains that the State filed an amended information the day after he asserted his right to speedy trial and the amended information prejudiced his defense as it added new charges. Petitioner argues that pursuant to Florida law, counsel had to move to dismiss the amended information prior to his arraignment, but counsel failed to do.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the

claim. (App. E, Order Denying Amended Motion for Postconviction Relief at 4.) The state court reasoned that Petitioner failed to "specify the facts he and counsel could have learned if the trial had been continued to permit discovery on the new charges, or how these facts would have tended to establish his innocence." *Id.* The state court concluded, therefore, that the claim was "conclusory and insufficient to show how additional discovery would have made a difference in the outcome of the trial." *Id.*

Pursuant to Florida law, "the state may amend its information pre-trial or even during trial, either as to substantive or non-substantive matters, unless the defendant is prejudiced thereby." *State v. Clifton*, 905 So. 2d 172, 178-79 (Fla. 5th DCA 2005) (citing *Lackos v. State*, 339 So. 2d 217 (Fla. 1976); *State v. Anderson*, 537 So. 2d 1373, 1375 (Fla. 1989); *Rivera v. State*, 745 So. 2d 343 (Fla. 4th DCA 1999); *State v. Garcia*, 692 So. 2d 984 (Fla. 3d DCA 1997); *Sanders v. State*, 669 So. 2d 356 (Fla. 5th DCA 1996)). "Therefore, the central inquiry is whether the defendant was prejudiced by the amended information." *Id.* "[T]he changing or adding of an offense in an information is a substantive change evoking prejudice and requiring a continuance." *Wright v. State*, 41 So. 3d 924, 926 (Fla. 1st DCA 2010) (citing *Peevey v. State*, 820 So. 2d 422 (Fla. 4th DCA 2002)).

As noted previously, Petitioner was arrested on September 14, 2001. On October 4, 2001, the State filed an information charging Petitioner with two counts of robbery with a firearm of Adkins and two counts of fleeing or eluding. Thereafter, on October 29, 2001, Petitioner filed a demand for speedy trial. The following day the State filed an amended information charging Petitioner with three counts of robbery with a deadly weapon for the

incidents involving Adkins, Kendrick, and Washington, and one count of fleeing or eluding. On October 31, 2001, the trial court held a calender call on Petitioner's demand for speedy trial.

At the calender call, Petitioner was arraigned on the amended information. Petitioner represented that he still wanted to exercise his right to speedy trial,[5] and defense counsel noted that he intended to file a motion to suppress despite the demand for speedy trial. The state court noted that generally when a demand for speedy trial is filed, the defense is representing that it is prepared for trial and no motions, such as a motion to suppress, may be filed thereafter. The prosecution noted that the amended information added an additional robbery count. The trial court set the case for trial on November 13, 2001,[6] but allowed the defense to file a motion to suppress and conducted a hearing on the motion on November 15, 2001. The defense noted that it had received some discovery and the prosecution had obtained some new discovery the day before the hearing.

At the suppression hearing, conducted prior to trial, five witnesses testified. The three victims and two officers, one of whom apprehended Petitioner, testified regarding the offenses. Defense counsel had an opportunity to thoroughly cross-examine these

---

[5]Florida Rule of Criminal Procedure 3.191 requires the state to bring a defendant to trial for a felony charge within 175 days. "The defendant has the right to demand a speedy trial, which will substantially shorten the time periods, especially if the charge is a felony." *Clifton*, 905 So. 2d at 175. Upon the filing of a demand for speedy trial, the trial court must hold a calender call within five days and set the case for trial no less than five days and not more than forty-five days from that date. *See* Fl. R. Crim. P. 3.191(b)(2)-(3).

[6]The trial did not actually begin until November 15, 2001.

witnesses.[7]

Petitioner has failed to demonstrate that he was prejudiced by the State's amendment of the information.[8] Although the amended information added new charges and was filed one day after Petitioner filed his demand for speedy trial, Petitioner's counsel obtained discovery and was able to thoroughly question four of the eight trial witnesses prior to trial. Furthermore, the latent print examiner and the crime scene technician who were called at trial did not implicate Petitioner in the offenses. Finally, the defense was able to challenge the identifications of Petitioner prior to trial. This is not a case where the State waited months to amend the information, waited until the speedy trial time expired, or waited until the trial had started before amending the information. Furthermore, even assuming that the amendment of the information was prejudicial to Petitioner, such prejudice would have entitled the defense to a continuance, not necessarily to the dismissal of the amended information. As such, the Court concludes that Petitioner has failed to demonstrate that absent counsel's failure to timely move to dismiss the amended

---

[7]At trial, the prosecution called eight witnesses. The witnesses included the three victims, the officer who apprehended Petitioner, another officer who participated in the apprehension of Petitioner, the owner of the truck used during the robberies, a crime scene technician, and a latent print examiner. The latent print examiner testified that there were no viable prints found.

[8]Interestingly, Petitioner argues in his amended habeas petition that "[h]ad counsel filed a timely motion to Dismiss Amended Information, Petitioner would have been tried on the original Information *that he was prepared to defend against. . . .*" (Doc. No. 35 at 20) (emphasis added). However, from the transcript of the calender call on the demand for speedy trial, it does not appear that defense counsel advised Petitioner to assert his right to speedy trial or that defense counsel necessarily concurred with Petitioner's decision.

information, a reasonable probability exists that the trial court would have granted the motion to dismiss. Accordingly, this claim is denied pursuant to § 2254(d).

### D.   *Claim Four*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to request a severance of the offenses prior to or during trial. In support of the claim, Petitioner contends that the two robberies were not sufficiently similar to warrant consolidation and the jury improperly relied on threats made during the second robbery to find the deadly weapon element of the first robbery.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (App. E, Order Denying Amended Motion for Postconviction Relief at 4.) The state court reasoned that the robbery of Washington occurred only twelve minutes before the robberies of Adkins and Kendrick and the robberies were similar to each other. *Id*. As such, the state court determined that had counsel moved to sever the charges, no reasonable probability existed that the trial court would have granted the motion or that the appellate court would have reversed the trial court. *Id*.

Pursuant to Florida law, two or more related offenses may be tried together "if they are triable in the same court and are based on the same act or transaction or on 2 or more connected acts or transactions." *Hutchinson v. State*, 731 So. 2d 812, 815 (Fla. 5th DCA 1999) (quoting Fla. R. Crim. P. 3.151(a)) (emphasis deleted). Offenses are connected acts or transactions if "'they occurred during a 'spree' interrupted by no significant period of respite, . . . or . . . one crime is causally related to the other, even though there may have

been a significant lapse of time.'" *Id.* (quoting *Ellis v. State*, 622 So. 2d 991 (Fla. 1993))(citations omitted). "The factors to consider in determining whether joinder is permissible include 'the temporal and geographical association, the nature of the crimes, and the manner in which they were committed.'" *Id.* (quoting *Bundy v. State*, 455 So. 2d 330, 345 (Fla. 1984)).

In the instant case, the robberies of Washington, Adkins, and Kendrick were committed within a few minutes of each other and in close proximity. The evidence established that the same vehicle and gun were used during the robberies, and Petitioner and his co-defendant used bandanas to conceal their identities during the robberies. Thus, the offenses occurred in close proximity in time and location and were perpetrated in the same manner. Accordingly, Petitioner has not demonstrated either deficient performance or prejudice based on counsel's failure to request the charges to be severed, and claim four is denied pursuant to § 2254(d).

### E.    *Claim Five*

In claim five, Petitioner maintains that trial counsel rendered ineffective assistance by failing to object to fundamental error in the jury instructions. Specifically, Petitioner complains that counsel failed to object to the following instruction, "one, that Michael Dean took the money from the person or custody of Richard Kendrick, *or one of the other victims*." (Doc. No. 35 at 24.) Petitioner argues that the instruction failed to identify the names of the other victims. *Id.*

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief

pursuant to *Strickland*. (App. E, Order Denying Amended Motion for Postconviction Relief at 5.) The state court reasoned that the claim was refuted by the record which demonstrated that the trial judge actually advised the jury that he would only read the robbery instruction one time and the jury should then apply the instruction to each victim. *Id*. The state court further noted that the trial judge wrote the name of the victim on each of the verdict forms applicable to each count. *Id*. The state court concluded that counsel had no basis to object to the instruction and no prejudice resulted therefrom. *Id*.

The state court's denial of this claim is supported by the record. Prior to charging the jury, the trial judge advised the parties:

> . . . The robbery definition applies equally to Washington and Kendrick, and it applies, along with the attempt definition, to Adkins. So I'm only giving the robbery definition one time.
>
> . . . [T]hese jury verdict forms need to tell [the jury] which count we're talking about. . . because they're going to say Count I, we don't even remember who it is that that applies to. . . .
>     Now, here's what I propose, since they're not written there - - is, I'll handwrite on [the verdict forms], under Count I, which robbery we're talking about. . . .

(App. B at 518-19.) The trial court then wrote the victims' names under the pertinent count on the verdict forms for the count applicable to that victim. *Id*. at 519-20. Thereafter, the trial judge instructed the jury that he was only reading the robbery instruction once and that the jury should apply the instruction to the victim to which the count applied. *Id*. at 523. Thus, counsel had no basis to object to the instruction as the judge made it clear to the jury that the robbery instruction should be applied separately to each count of robbery

charged. Accordingly, Petitioner has not established either deficient performance or prejudice, and claim five is denied pursuant to § 2254(d).

### F.    *Claim Six*

Petitioner maintains that trial counsel rendered ineffective assistance by failing to object to the principal jury instruction as vague. Specifically, Petitioner contends that he was alleged to have aided his co-defendant with respect to one count. As such, Petitioner maintains that the trial court should have advised the jury that the principal instruction only applied to count three.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (App. E, Order Denying Amended Motion for Postconviction Relief at 6.) The state court reasoned that Petitioner failed to demonstrate prejudice because "if there was no evidence of other suspects in certain counts, there is no reasonable probability that the jury would have convicted Defendant solely on the basis of the principal instruction." *Id*.

The Supreme Court of Florida has held that "[u]nder Florida law, a person who is charged in an indictment or information with commission of a crime may be convicted on proof that she aided or abetted in the commission of such crime." *State v. Larzelere*, 979 So. 2d 195, 215 (Fla. 2008) (citing *State v. Roby*, 246 So. 2d 566, 571 (Fla. 1971)). Thus, under Florida law, "if an information charges a defendant with a substantive crime, . . . and the proof establishes only that he was feloniously present, aiding, and abetting in the commission of the crime, a verdict of guilty as charged should be sustained." *Watkins v.*

*State*, 826 So. 2d 471, 474 (Fla. 1st DCA 2002) (citing *Roby*, 246 So. 2d at 571, and *Jacobs v. State*, 184 So. 2d 711, 715 (Fla. 1st DCA 1966)). As such, the state court properly instructed the jury as to the principal theory pursuant to Florida law.

Moreover, Petitioner has not shown that a reasonable probability exists that the outcome of his trial or appeal would have been different had the trial court instructed the jury that the principal instruction applied only to count three. The evidence of Petitioner's actions in relation to counts one, two, and four established that Petitioner was the individual who actually robbed Kendrick and attempted to rob Adkins and who fled or attempted to elude a law enforcement officer with lights and sirens activated. The principal instruction clearly stated, "If the defendant helped another person or persons to commit a crime, the defendant is a principal. . . ." (App. B at 527.) In light of the evidence presented, there is no reason to believe that the jury applied the principal instruction to counts one, two, or four. Accordingly, claim six is denied pursuant to § 2254(d).

### G. Claim Seven

Petitioner asserts that the trial court's denial of Petitioner's motion to correct illegal sentence resulted in error. In support of this claim, Petitioner maintains that the State failed to prove that Petitioner qualified as a prison releasee reoffender ("PRR") pursuant to Section 775.082(9), Florida Statutes. Petitioner argues that the State's evidence, a Florida Department of Corrections ("FDOC") letter which stated Petitioner's most recent release date, was inadmissible hearsay.

Petitioner raised this claim in his Rule 3.800(a) motion. The state court determined

that the claim was facially insufficient because Petitioner failed to allege that he did not qualify to be a PRR. (App. H at 21.) The state court further reasoned that the claim was without merit as an FDOC letter was admissible to establish the defendant's most recent release date. *Id.*

Federal habeas relief is warranted only to correct injuries resulting from a violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Wainwright v. Goode*, 464 U.S. 78 (1983). "Errors which do not infringe upon federally protected rights provide no basis for federal habeas corpus relief." *Lightfoot v. Secretary Dept. of Corrections*, 2009 WL 2973661, *6 (M.D. Fla. 2009). The Eleventh Circuit has held that federal courts may not review a State's purported failure to adhere to its own sentencing procedures. *Branan v. Booth*, 861 F.2d 1507 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan*, 861 F.2d at 1508. Thus, the instant claim concerning the state court's application of sentencing procedure is not subject to habeas relief.

Furthermore, the Court notes that the instant claim would be subject to denial pursuant to § 2254(d) if considered on the merits. The record reflects that at the sentencing hearing the State offered a letter from the FDOC to establish Petitioner's release date from the FDOC. (App. A at 13.) The State advised the trial court that it was prepared to prove Petitioner's release date if the matter was contested. *Id.* In response, defense counsel stipulated to the date Petitioner was released from the FDOC and agreed that Petitioner

qualified as a PRR.  *Id*. at 13-14.  In light of the defense's representations coupled with the State's offer to prove the matter, Petitioner has not established that the state court erred in finding Petitioner to be a PRR.  Accordingly, this claim is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).   To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009).   When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id*.; *Lamarca*, 568 F.3d at 934.    However, a prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Moreover, Petitioner cannot

26

show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.     The Amended Petition for Writ of Habeas Corpus (Doc. No. 35) filed by Michael Dean is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     Petitioner is **DENIED** a Certificate of Appealability.

3.     The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 27th day of September, 2011.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-1 9/27
Michael Dean
Counsel of Record